**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Ehnae Northington,** | ] | |
| **plaintiff,** | ] | |
| | ] | **No. 08 CV 6297** |
| **vs** | ] | **Judge Manning** |
| | ] | **Magistrate Mason** |
| **H & M International, Inc.** | ] | |
| **defendant.** | ] | |

**Revised Motion for Proper Sanction for Failure
To Produce Electronically Stored Information ("ESI")**

Plaintiff Ehnae Northington brings this motion to request sanction for failure to retain and produce ESI, and failure to comply with its own representations   in an Electronic Discovery Agreement, Ex. 5, executed pursuant to this court's Order, and representations to opposing counsel on 18. November, 2009, Ex. 6.

This motion results also from the Order of Judge Manning, 3. August, Order dismissing an appeal as untimely for failure to bring this motion before this court.

This motion also results from relevant evidence and circumstances in the court's files,  exhibits previously offered by plaintiff, and letters between counsel also previously filed; but not argued at length. These would have been highly relevant had they been considered in the determination  for the Order dated 29. June, doc. 77, pg 2.

The "certification letter" copy mailed to counsel states:

"I write in regard to Magistrate Mason's May 26, 2010 Minute Entry (Doc. 65).  Please accept this correspondence as H & M's certification in writing that H & M has produced all documents in its possession, custody or control responsive to Plaintiff's Request for Production V as narrowed and set forth in Plaintiff's May 13, 2010 filing with this Court.(Doc. 60, Ex.A).

This motion requests consideration of relevant background,  and

compelling reason to enter the only proper sanction for defendant's failure to produce requested ESI: an order barring defendant from putting on any defense to plaintiff's complaint.

Plaintiff did not respond to the Certification Letter because (1) the court did not request for it; and (2) after the colloquy in open court when the letter was produced, counsel formed the clear impression that now the court was ready to rule, and desired no more comments from either counsel.

The specific ESI items requested by plaintiff and which are the gist of her motion for sanctions are as follows:

"ELECTRONIC DISCOVERY REQUESTS

(Revised, 5.24.2010)

"b. the meeting Collins held during summer, 2006, to tell Sims and plaintiff that if they were going to fight, do it outside the yard, etc.,

"d. the F150 Fort truck incident concerning excessive carbon monoxide;

"e. Plaintiff's fax to Mary Hayes [personnel director] dated 18. June, 2007, H & M 000455-459;

"f. Plaintiff's telephoning Connors [ H & M CEO], and their conversation, eMails, faxes from Connors to Global II and others regarding a lowly inventory clerk at Global II reaching him personally; and the follow-up visit to Chicago by the H & M Officer in charge of railroad business, Mr. Herrington;

"g. Sims' assault and battery, December, 2007;

"h. Sims' guilty plea in Circuit Court, March 2008';

"i. eMails and faxes during March---June, 2008 referring to any plan to have plaintiff take a drug test; and Global II exchanges, eMails, back and forth with Concentra dealing with the drug test;

"j. eMails and faxes referring to and discussing the drug test and its aftermath, May---June, 2008;

"l." eMails and faxes during the summer of 2008 and up to the time of termination of employment of Collins and his wife Tanga Hoskins' Collins referring to Ehnae, Northington, and/or Ehnae Northington.

"All such electronic data to have he name "Ehnae", "Northington", and or "Ehnae Northington" in it."

## I.  What Defendant Has Actually Produced in ESI.

According to H & M's certification it produced "all documents in its possession, custody, or control responsive to [plaintiff's 24. May] request.  ----2

**A. Produced?**

**1.** Item (e), the fax to Mary Hayes from plaintiff was produced before the ESI request as an exhibit from H & M for its deposition of plaintiff. These are Bates 000455-459. The request was redundant. Of course, another reason to produce it was that plaintiff, herself, wrote it, and faxed it to Ms. Hayes.

**2.** "Actually Produced"

In a Letter response to plaintiff's persistent ESI demand, on 7. April, 2010, H & M counsel identified the pages produced as full compliance. Ex. 8, attached.

M & M identifies such pages by Bates numbers as comprising its "full compliance". Ex. 13 attached, contains them:

exhibits 13-2 (439), 13-4 (441), 13-7 (444) and 13-10 (670) are one continuous and redundant copies of a letter posted to plaintiff (in plainiff's possession) of her discharge notice;

exhibits 13-1 (438), 13-3 (440), 13-5 (442), and 13-9 (669) are all redacted;

exhibit 13-6 (443) is a blank page except for an unexplained statement from Collins to Ms. Hayes;

exhibit 8 (518) pertaining to a "drug screen" has no substance or explanation;

exhibit 13-9 (669) again is has now information except that is a deleted letter to plaintiff.

H & M's presents a picture of a perfect *sham, a tease to counsel.*

Yet, it sufficed to enable H & M counsel to have an appearance of good faith.

This court in its 23. June ruling denying sanctions, bit this bullet whole hog. At page 2 doc.77, this court said:

> " * * * * *Additionally, defendant has repeatedly affirmed that it has already produced *all* (not merely "relevant") documents in its possession, custody, or control responsive to plaintiff's narrowed request. (Resp. at 5; *see also* Order dated 5/26/10 [65]. After the 5/26/10 status, this Court ordered defendant to so certify in writing to plaintiff by 5/27/10 [65]. Plaintiff has not brought to this Court's attention any failure by defendant to so certify. As a result, the portion of the motion addessing Request for Production V is stricken as moot".

As explained above, plaintiff did not reply because it was not asked to do so. Moreover, the demeanor of the court presented a picture that it had heard enough and was taking the matter under advisement to rule.

To conclude and accept veracity in defendant's "representations" were mistaken. Plaintiff took the quoted language above to be that of an argument, not a judicial holding based on the relevant evidence.

## II. Fraud Resulting from Failure to Reveal Materially Important Facts So As Not to Mislead the Court.

A. Under Securities law, and Illinois common law, one may defraud in two ways when soliciting a purchase/sale, or a court ruling. One may render a completely false statement. Or, as is more common, a soliciting party (such as Goldman Sachs) may fail to reveal materially important data or items that the solicited party needs to know in order to make an informed decision. This same axiom or paraphrase of SEC Rule X-10(b)-5 also applies to counsel representations to courts.

Way back in November and December, 2009, counsel engaged in correspondence and eMails in order to fulfill a requirement/Order of this court, that counsel agree on an "Electronic Discovery Agreement". We did so. Exhibit 5. One has nothing but respect and approval of the purpose of such agreement; wholly appropriate to the uniqueness and newness of ESI.

Exhibit 6, attached, a letter to counsel dated 18. November, 2009 contains pertinent admissions and statements from H & M relevant to reconsider on this motion.

The zeitgeist of those times for counsel involved compliance with the court's order to effect such agreement and to submit it on time. Defendant was particularly anxious to get it done. H & M counsel authored virtually all the fine language in the joint Agreement, and received a warm compliment from his counterpart.

--4

Getting the agreement also served an obvious, but not obvious, strategy of a party who has virtually all the relevant "discovery", documents, records, ESI in its care, custody and control.  Their  game, often,  is to hurry and accomplish quickly their discovery; and then portray the other party, who's case needs their data, as a straggler,  guilty of asking for burdensome, and redundant materials, etc. Produced, indeed often voluntarily and unsolicited, are records not really important but always voluminous to enable them they have now provided their opponent with so many hundreds of pages and records, that to produce more would be time consuming and a burden.  As the party needed the discovery presses the court to get the important materials, , it's "welcome" wears thin.

B.  18. November, Letter, PX 6.

In the letter, H & M counsel confirm notice that *"you intend to seek this information in discovery"*.  Counsel continues:

> *"Therefore, in addition to steps that Defendant has already taken to  preserve other documents and electronically-stored information that it determined may be relevant in this case, Defendant will take the appropriate steps to preserve this information [subject to objection as to relevance and discoverability]".(italics added).*

Counsel continues to notify plaintiff of the following: (bold added)

> **"On this issue, please note that eMails of H & M employees that are assigned a computer are kept on that individual's computer. If an H & M employee assigned a computer leaves H & M's employ, that individual's computer is wiped clean and the computer is reassigned to another individual. Bart Collins was terminated on September 2, 2008, before Plaintiff filed either a charge of discrimination or initial  Complaint in this matter.  As a result, any e-mails or other information that Bart Collins had on his computer were destroyed before Plaintiff had filed her charge."**

To wipe clean a computer of the  person in charge or Terminal Manager of Global II with about 837 employees and a Union Pacific Contract paying H & M in excess of $40,000,000 yearly strains creditability. Collins' managerial role made him more than a regular H & M "employee".

The letter represents that the personnel director, Mary Hayes, *has preserved* all of the e-mails and other electronic information that she has related to this matter, which includes correspondence with Bart Collins. *"Defendant would be in a position to produce this information provided that it is responsive to any of plaintiff's forthcoming discovery requests."* Counsel also confirmed that matters had been saved on president Connor's ESI concerning plaintiff's call to him during which she claims to have told him "I fear for my life" because of threats from the daughter-in-law of Collins, Sequita Sims.

3. **Where's the Fraud? Exhibits 2, 3.**

The letter indicates defendant had no knowledge as of 2. September, 2002, that plaintiff had filed a Charge of Discrimination with the EEOC, nor knew of a Right to Sue letter dated 1. August, 2008.

Defendant's *statement of fact* was false.

Plaintiff had filed her Charge of Discrimination with EEOC on 22. July, and defendant had been served by mail dated two days later, 24. July. See Exhibits 2, 3, appended. Finally, and more importantly the EEOC issued its Right to Sue letter on 1. August; notified plaintiff by certified mail (which delays receipt) and defendant by regular mail. EEOC procedures dictate this requirement.

Counsel's letter "certification" that H & M wiped-clean Collin's computer "before any notice" was not true.

Counsel did not inform the court that it had wiped clean the Collins computer around 1. September, 2008. A significant "material omission". The court needed this to be able to judge, accurately and fairly, plaintiff's motion for sanctions.

The Certification Letter, itself, exemplifies the half-truths and omitted material explanations so typical of H & M in this case. Collins, and other top persons at Global II each had two computers, a desk top, and a lap top. Moreover they had two different systems through which they communicated: one the UP system, UP.com., the other an H & M system, hmit.net.. ESI on the UP system, when used by Collins, could not be trashed. If he used hmit.net, his mails and faxes pertaining to plaintiff and the specific occurrences, *supra,* pg. 2,          ---6

would be stored on the H & M "server".

Both the Court and plaintiff have accepted the Certification Letter as the expressed "Certification" from opposing counsel that represents the position of H & M.  That certification that it has no such ESI, alone, provides all this court needs to enter  the appropriate sanction: that  H & M shall be barred from asserting any to liabilities in this case.


### III. Significance  of  Bart Collins and his Computer


No single person, or H & M "employee", had the importance to plaintiff for this case as Bart Collins, Terminal Manager, and her direct "supervisor" for most of 2007 and into 2008.

Without access to his computer and ESI on outboard servers, plaintiff becomes materially handicapped at trial or summary judgment. How may Collins be cross-examined when he may hide behind the secrecy or absence of his ESI? He has a position to perjure or mislead without any means of check. Plaintiff becomes deprived of ESI that, itself, would reveal Collins'  perpetrating the sex discrimination, hostile environment, and retaliation.


Collins boasted of his micro-management at Global II in a sworn statement part of the "discovery" provided plaintiff on an *un*solicited basis.


> "2. I was the Terminal Manager at H & M's Global I
> facility from about February 2006 to about March 2006. I was
> Terminal Manager at H & M's Global II facility from about
> March 2006 until on or about September 1, 2008
> "3. On or about September 1, 2008, I resigned from my'
> position as Terminal Manager at Global II.
> "4. As Terminal Manager, I was responsible for running the
> entire Global II facility; ensuring the loading and unloading of
> all inbound and outbound freight; hiring, disciplining, promoting,
> and demoting Global II employees; and being involved in the
> termination process for any Global II employee."                    --7

In early 2007 plaintiff prevailed at a Grievance Hearing at which Collins charged her with forging a speeding ticket to use  as an excuse for tardiness --   in

reporting for work. The charged lacked merit.

After the hearing Collins remarked to a couple Union representatives., "If I have to take her back, I will get her". This was exactly the agenda he pursued against plaintiff.

Plaintiff described it this way during her Deposition (pg. 117-118), Ex.21:

"A  No. I was scared to say something to her [Sequita Sims, her later assaulter]  because they was trying to find every little thing to discipline me or fire me.  So it was like she could say whatever to me, but if I react, oh. I'll get in trouble because her mother was the boss the time. It was hell going to work every day. Every day it was something.
"Q And you testified earlier that there were like between five and ten incidents, and you now testified -- I just want to clarify what you mean by every day. Is it just hyperbole?
"A  It's not even with Sequita. It was something with Bart or Tanga every day. It was something every day. What are  you doing in here? Oh, I'm getting  pop. Well, go back to work. I can't stop down something to drink? You don't say nothing to nobody else. It was something every day. I come to work. There's people with less seniority than me. They are already working  overtime. I didn't get a call.

Up to the middle of 2007 a friendly Annie Johnson had the Supervor's job which oversaw, directly, the performance of inventory clerks, including plaintiff. She quit because of harassment from Tanga and Bart Collins.

Bart Collins did not replace her. Instead, he took on this job himself. It gave Collins regular and daily access to plaintiff. She believed he did this to find way to discharge her.

Before Sims committed her assault and battery on plaintiff in  December, 2007, plaintiff had a conversation with Collins, as follows, Dep. pp 131-2,( Ex. 21):

"Q  So in attendance at the meeting were Bart, Charey, you, Sequita. Anyone else?
"A  No
    But the first meeting I had with Bart when he came and got me, it was just me and Bart in the truck. That was the second meeting.
"Q So this is -- what you're telling me now about is the second meeting?
"A  Yes.  That was when I went to Bart.
The first meeting with Bart came to me because he had been hearing people telling him he needed to do something about it  [Sims vulgarities and threats directed at plaintiff].                                   --8
"Q  So the first meeting, the first meeting you had with Bart, what

did you say to Bart?

"A  *I told Bart she came up on the property. She came on the property off the clock to threaten me over Terrill, who I was not messing with, and he needed to do something about it. I  heard she carries weapons, and you know she is circling the parking lot. And they sent me home early to avoid a situation. You need to do something about it.*

"Q Did you tell him why you thought she was threatening you?

"A He already knew why.

"Q Why?

"A  He already knew why.

"Q Why?

"A It wasn't a secret.

"Q Why did you think he --

"A I don't know. Ask Bart."


This colloquy helps to comprehend the large role Collins played in the circumstances plaintiff endured at H & M..

A trial, or summary judgment, without the plaintiff having access to Collins' computer would be one without due process, a charade.Without that access plaintiff will be deprived, *at initio,* of due process of law. c/f *In re Uppercu,* 239 U.S. 435, 439-440 (l915).


## IV. Electronic Stored Information Agreement, per Court Order (Ex. 6)


This agreement, dated 1. December, 2009, contains significant representations and undertakings by H & M, which plaintiff relied upon. Defendant has not complied with its undertakings.

What *did* H & M agree to do?

**A**).  " * * * with this notice [H & M] has taken appropriate steps to preserve ESI of" ---

> Charles Connors, CEO
> Bart Collins, Global II manager
> Kevin Harrington, Sr. VP, Rail
> Mary Hayes, director "human" resources
> Tim Newcomb, Global II employee
> Tanga-Hoskins Collins, asst. yard manager
> Sequita Sims, assaulter, programmer, daughter of Tanga.        --9

**B**).  Readily agree to use ESI searches using keywords, "Ehnae", "Ehnae Northington", and/or "Northington".

This has significance which disproves the redundant and trite claim of H & M that to comply with a certain ESI request would be "unduly burdensome," etc.

Why? ESI may be stored on either computers, or out-board "servers".The latter replace storage warehouses used to retain  and store paper files. Servers may be purchased, or rented.

In both storage places, all that is needed to start searching is entry of a keyword. With that entry the server reveals wherever that keyword, such as Ehnae appears. Then searching becomes merely a matter of perusing those places with that keyword to locate the ESI desired to download.

The three keywords here are/were unique, especially "Ehnae"; hence it became easier to locate and scan.  Gone are the days when one had to go to the warehouse, open cardboard boxes of paper files, and start fishing.

**C**). "In the event that a large volume of [ESI] needs to be produced, and it appears more appropriate to produce [ESI] in electronic format", H & M agreed with plaiintiff "to produce on CD in PDF, or another similar format".

**D**). In the event that "relevant questions related to those systems" arose, they could be addressed to Mike Hosmer, H & M  Executive V-P,  in charge of "Management Information Systems" [MIS}.

Contracts, and even "agreements" made pursuant to a Court Order do *not* enforce themselves. Only a judge using his judicial authority may do that. In this case, the remedy for the court, pursuant to Rule 37, is to apply a sanction preventing H & M from asserting any liability defense to plaintiff's claims.

**V.  Magistrate Cox's Memorandum and Order,** *Victoria Jones v. Bremen High School District 228,* 08-CV-3548, Doc. 71, currently on appeal to Judge Manning.

Magistrate Cox has rendered  persuasive and definitive opinion on the same legal questions presented in the instant case. Counsel can do no better      -10

than Magistrate Cox, and incorporates by reference her impressive analysis,

citing authorities, regarding  rules of law pertaining *to the preservation and saving of ESI* and federal law.

Appellant's have filed their memo with Judge Manning; plaintiff is now in bankruptcy;  Judge Manning has put the appeal on hold pending a statement from the bankruptcy trustee.

The *Victoria Jones* case  differs  on the facts.  There the defendants did participate actively in a production and a process.  ESI were produced. Here, we have a record of defendant stonewalling the entire process, and allaying opposing counsel with its false commitments, "hold orders". It disregarded, the obligations  in the Agreed ESI "order", its representations to counsel in the 18. November, 2009 letter, Ex. 6. The sole thing it produced was to inform plaintiff's counsel in the 18.  November letter that it had "wiped clean" Collins' computer. It committed a fraud by omitting to reveal this to the court in its "certification".

Counsel  believed after learning of the wiping clean that whatever would be on Collin's computer would also be on some other H & M computer or storer, such as Mary Hayes, CEO Connors, etc.. The 29. June Certification states these other sources not to be there.

By comparison with the *Jones* case the instant case needs a sanction preventing defendant from putting on a defense to its liability.   Magistrate Cox,  in a lesser violation case, reasoned as follows:

**"III Analysis**

**A. Duty to Preserve**

"The first issue we must resolve is when defendant's duty to preserve evidence is triggered. A defendant has a duty to preserve evidence that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action [citing case]. Documents are potentially relevant if there exists a possibility that the information in the documents would be relevant to any of the claims. [citing case] The duty arises when a reasonable party would anticipate litigation and does not depend on a court order [citing case]. Defendant clearly had a duty to preserve documents

--11

relevant to plaintiff's claims when it received notice of plaintiff's EEOC charges on or before November 30, 2007; accordingly defendant had a duty to preserve documents relevant to plaintiff's discrimination claims at least by this date."

Applying Judge Cox's holding to the instant case, defendant had a duty to preserve relevant materials and ESI relating to Ehnae Northington after its receipt by first class mail of a "Notice of Charge of Discrimination" shortly after its date, 24. July, 2008. PX 2. This date, and the follow-up mailing of the Right to Sue letter dated 1. August establish the applicable time herein. Defendant asserts to have wiped clean Collin's computer after he left H & M on 1. September.

Magistrate Cox held the School District

"clearly breached its duty to preserve relevant documents in this litigation. Defendant was aware at least by November 2007 that plaintiff was challenging  its treatment of her on the basis of her race and alleged disability. (Doc. 71, page. 14)

After her "Harm to Plaintiff" and the "Level of Fault" analysis (Doc 71, pp. 16-17),  Magistrate Cox said the defendant's conduct demonstrated a reckless and grossly negligent conduct at preserving and making available ESI. (pg 20).

She held, pg. 21,  "defendant will be pecluded from arguing that the absence of discriminatory statements from {relevant period} is evidence that no such statements were made.***" She also awarded costs and fees and permitted another deposition by plaintiff, if requested.

Any reasonable comparison to the facts before Magistrate Cox and the facts of the present case coupled with the deliberate erasing of the single most important ESI, and counsel's omission to reveal  justify a sanction barring defendant from asserting any defense to liability.                              (12

As relevant background and applicable U.S. Supreme Court decision, counsel can do no better that cite this court to Justice Holmes' opinion dated 1915 in *Ex Parte Uppercu*, 239 U.S. 435, 439-440. Here he reminds us of the basic

essentials of an adjudication employing "due process of law".

**Wherefore,** plaintiff respectfully requests this Court to enter Order as follows:

1. Enter sanction pursuant to Rule 37 that forbids defendant H & M from asserting any defense to liability;

2. Enter such other relief and sanction as this Court deems appropriate.

Respectfully submitted,

\_\_/s/\_(A) Ware Adams
1560 North Clark #3315
Chicago, 60610
Ill. # 13668
16. August, 2010          wareadams@rcn.com

CERTIFICATE OF SERVICE

I, Ware Adams, an attorney, hereby certify that a copy of the foregoing Motion For Proper Sanction for Failure to Produce ESI ["Electronially Stored Information"], was served upon defendant H & M counsel, by filing it with the Clerk of the Court, Northern District of Illinois, before 4:00 P.M., on 16. August, 2010 by utilizing the Court's electronic filing system.

\_\_\_(A)\_Ware Adams\_\_

**EXHIBITS**

1. EEOC Right to Sue Letter, 8/1/08
2. EEOC Notice to H & M of filed charge by plaintiff, 7/26/08
3. EEOC Charge of Title VII Discrimination by plaintiff, 7/22/08
4. Letter, certification from H & M counsel to Magistrate, 5/27/10

5. Electronic Discovery Agreement, 12/1/09

6. Letter from H & M counsel to plaintiff's counsel, 11/18/09

7. Order, Doc. 77, 6/29/10

8. Response of H & M to plaintiff's document request, objecting to production, and identifying by Bates pages all documents ESI documents produced;

9-12 ---

13. Thirteen pages of produced ESI identified by defendant as responsive to plaintiff ESI request to produce.

----

20. Magistrate Cox's Memorandum and Order, 08-cv-3438 [doc. 71]

21. Northington deposition pages 117-118, 131-132