IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Ehnae Northington, | ] | |
|     plaintiff, | ] | |
| | ] | No.  08  CV  6297 |
| vs | ] | Judge Manning |
| | ] | Magistrate Mason |
| H & M International, Inc. | ] | |
|     defendant. | ] | |

**REPLY IN SUPPORT OF SANCTION TO BAR
ASSERTION OF DEFENSES TO TITLE VII VIOLATIONS**

      To read defendant′s thirteen pages of argument opposing the bar of defenses to Title VII violations, the reader finds just one sentence which makes reference to the *controlling document and Order* governing plaintiff′s motion. At the top of page six we read, as a fact, "Pursuant to this Court′s order, the parties′ Agreement Regarding Electronic Discovery ("Agreement") was executed and sent to chambers on December 1, 2009 (Doc. 42, 88-5)."

      **I. A Curve Ball**

      Rather than deal with ramifications of a failure to comply with the electronic agreement Order, defendant focuses exclusively on an attempt to find justification for its "wiping clean" or trashing of Bart Collins′ computer sometime after September 1, 2008.

      This took place after receipt of two notices from the EEOC of the filing of a charge by plaintiff (24. July) and issuance of a Right To Sue Letter dated August 1st.

Judge Cox's persuasive and well reasoned opinion, with authorities, held a failure to retain after reasonable notice, violated a legal obligation.

But the "curve ball" lobbed by defendants involves the implication that once the data was trashed off the Collin's computer, it was gone forever, *and not to be found anywhere else in the battery of H & M computers and storage facilities.*

Such implication is false. Collins did not send eMails to himself, nor fax data to himself. Electronic data on the trashed computer came from others at H & M, or went to others at the company. For this reason the data could have been retrieved by H & M and produced for plaintiff.

A discharge letter posted by Collins to plaintiff exemplifies this. See Exhibit 1, attached. He sent a copy of his letter to Mary Hayes, personnel director, Kevin Harrington, V-P Rail and his immediate superior, Wayne Herring,the Union Steward, the Union, and to the "Company File". The latter probably was a file pertaining exclusively to Ehnae Northington.  If such a mailing had been sent electronically, then trashing it from Collins' computer would not have erased it elsewhere.

The sworn statement of MIS V-P Hosmer does not deal with this. He merely recites with different verbiage that the Collins computer had been trashed pursuant to company policy.

Significantly, the other persons to whom Collins sent his discharge letter are H & M personnel specifically cited in the Electronic Discovery Agreement as those whose electronic data had been saved for plaintiff. See Ageement, Exibibit 2, attached. H & M represented in this Agreement-Order, page 1:

> "* * *With this notice, Defendant has taken steps to preserve ESI of these individuals [Charles Connors, CEO; Kevin Harrington, V-P Rail; Mary Hayes, personnel; Tim Newcomb, Bart Collins, Tanga Hoskins-Collins; and Sequita Sims, plaintiff's assailant]. * * *"

H & M have produced no electronic data whatsoever from these individuals, except for Group Exhibit 12, a ruse and tease to counsel, described in the memo accompanying plaintiff's instant motion, pg. 3-4. By its "Certification" to this court H & M, avers it will not comply with plaintiff's ESI requests: Period.

H & M's conscious decision to go with its certification denial must represent a conclusion, that if produced, the ESI would be so harmful to their defense, and, or so harmful for their business, that they prefer to "risk" it with the court; and hope the court will show them a bias.

At least one specific ESI request of plaintiff did not concern Collins nor his computer at all. Plaintiff asked the ESI from CEO Connors pertaining to her prophetic phone call to him a month before her assault and telling him, "I fear for my life". She called again after the assault to complain that nothing had changed to alleviate her continued fears.

These calls would have generated eMails and faxes from and to Connors. The Bart Collins computer may not have been involved. H & M has stonewalled production from the Connors' ESI as well as Colliins.

**II. The Proper Remedy: Disgorgement of All Ill-Gotten Gains**

A. Magistrate Cox, 08-cv--03548, Doc. 71 (5/25/10)

Magistrate Cox had no standing order requiring an electronic discovery agreement. Her case, therefore, did not deal with the contempt of court issue present herein, nor a flagrant "certification" by a defendant that it will produce no more than already produced, ie. the "nothings" in Group Ex. 12. e/g Motion Memo page. 3. In addition, in her case the parties had actually exchanged ESI, but not all demanded or that should have been provided. Here, we have a total stonewall.

Nevertheless. Magistrate Cox found bad faith and a duty to preserve which resulted in the mild sanction to allow the jury to be told that the defendant had a duty to preserve all ESI, but did not do so; and therefore defendant was precluded from "arguing that the absence of discriminatory statements from the applicable period is evidence "that no such statements were made". Opinion, page 20.

-3

## B. Disgorgement of Ill Gotten Gains

Disgorgement of ill gotten gains has been a historic and often utilized common law and statutory remedy. The SEC uses it to disgorge self-dealing gains. It has been applied in an anti-trust environment. It is frequently applied to fiduciary violations and self-dealing by trustees.

It is clearly the appropriate and simple remedy to invoke against H & M under the circumstances of this case.

The remedy affords a simple, and expedient way of penalizing discovery violations and especially in violation in contempt of court.

It is simple and easy to enforce.

It puts the parties into a position they would have found themselves if no violation had occurred, and the wrongful party had complied.

It does not, necessarily, require a finding of dishonesty or unscrupulous conduct.

In this case, it would give the plaintiff the benefit of the myriad of Title VII violations that produced ESI would easily prove, especially with admissions by H & M parties, esp. Collins, Sims, Hayes, Connors, and Harrington.

It would deprive H & M from benefitting from its conscious stonewalling in disregard of this court's Order.

It moves the instant case ahead in a major step by shifting the emphasis to where it should have been long ago, ie. from liability to damages.

It is fair and equitable.

Counsel can do no better than quote the language used by Justice Scalia in a Supreme Court opinion, *U.S. v. Snepp,* 444 U.S. 507, 515-516 (l980). In this case the court dealt with the obverse situation than our case, an instance of improper disclosure of CIA data instead of improper secreting and stonewalling of data. The Court held:

"A constructive trust, on the other hand, protects both the Government and the former agent from unwarranted risks. This remedy is the natural and customary consequence of a breach of trust. [Footnote 11] It deals fairly with both parties by conforming relief to the dimensions of the wrong. If the agent secures prepublication clearance, he can publish with no fear of liability. If the agent publishes unreviewed material in violation of his fiduciary and contractual obligation, the trust remedy simply requires him to disgorge the benefits of his faithlessness. Since the remedy is swift and sure, it is tailored to deter those who would place sensitive information at risk. And since the remedy reaches only funds attributable to the breach, it cannot saddle the former agent with exemplary damages out of all proportion to his gain. The decision of the Court of Appeals would deprive the Government of this equitable and effective means of protecting intelligence that may contribute to national security. We therefore reverse the judgment of the Court of Appeals insofar as it refused to impose a constructive trust on Snepp's profits, and we remand the cases to the Court of Appeals for reinstatement of the full judgment of the District Court. So ordered"

**C**.. Your Honour, as a Signatory to the Sedona Conference Proclamation (2008).

Counsel took note at the time of the ESI Agreement Order that this court, itself, took personal part in endorsement of the principles set forth in the Sedona Proclamation; a compliment to the court.

That proclamation and the entirety of the conference's work may be stated in a nutshell: the necessity with respect to ESI of counsel to have honesty and integrity. This new format makes it so easy to cheat, to trash, to evade, and to claim a burden of excessive cost production.

The instant case, too, deals with good faith and integrity. Without making accusations, the unwillingness of H & M to produce ESI and its "certification" call for a fit sanction----and one that the court has, not only in its "reach"; but in its "grasp".

That sanction is an order barring H & M from asserting a defense to liability for Title VII violations.  H & M should not be allowed to benefit from its wrong doing: the parties should be put in a situation akin to that as if defendant had carried out its obligations and compliance.  Moreover, this sanction prevents defendant from "toying" with the court, and prolonging a case and trial that could be resolved more expeditiously.

### III. Conclusion

Wherefore, plaintiff Ehnae Northington respectfully asks this court to enter an Order barring defendant H & M from asserting a defense to liability for Title VII violations as alleged in the Amended Complaint, and for such other relief as this Court deems appropriate.

Respectfully Submitted,

_____/s/__Ware Adams__
Plaintiff's Counsel

A. Ware Adams (13668)
1560 N. Clark #3315
Chicago, Ill., 60610
312-787-5544

dated: 9. September, 2010

**Certificate of Service:**

I, Ware Adams, an attorney, certify that through the use of the Court's electronic filing system, filed this **Reply in support of Sanction to Bar Assertion of Defenses to Title VII Violations** with the Clerk of the Court, which sends notification to all counsel of record; and that I made such filing on this 9th day of September, 2010.

/s/ Ware Adams