**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EHNAE NORTHINGTON, | ) |
| | ) **Case No. 08-CV-6297** |
| Plaintiff, | ) |
| | ) **District Judge Blanche M. Manning** |
| v. | ) |
| H&M INTERNATIONAL, | ) **Magistrate Judge Michael T. Mason** |
| | ) |
| Defendant. | ) |

To:     The Honorable Blanche M. Manning
        United States District Judge

<u>REPORT AND RECOMMENDATION</u>

Michael T. Mason, United States Magistrate Judge.

Plaintiff Ehnae Northington ("plaintiff") has sued her former employer, defendant H&M International Transportation, Inc. ("defendant") (incorrectly named as "H&M International, Inc.") for "sexual and racial discrimination, a hostile work environment, harassment and retaliation," in violation of Title VII of the Civil Rights Act of 1964.

Currently pending before this Court is plaintiff's "Revised Motion for Proper Sanction for Failure to Produce Electronically Stored Information" [88]. In her motion, plaintiff argues that defendant failed to retain and produce relevant electronically stored information ("ESI"), including that stored on the computer used by her former supervisor, Bart Collins. Plaintiff seeks dispositive relief, in the form of a sanction that "forbids defendant ... from asserting any defense to liability," as well as any other relief this Court deems appropriate. For the reasons set forth below, we respectfully recommend that the District Court grant plaintiff's motion in part and deny it in part.

1

I.    FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from plaintiff's Second Amended Complaint [25]. Plaintiff is an African American woman under the age of 30 who began working for defendant on December 12, 2005.[1] Defendant, among other things, provides tracking services for railroad container freight shipments. Defendant hired plaintiff to work as a lot check clerk at defendant's Global II facility, located in Northlake, Illinois. Defendant discharged plaintiff effective May 6, 2008.

Plaintiff asserts that she suffered harassment and threats at the hands of various employees of defendant, including Bart Collins, the Terminal Manager at the Global II facility from March 20, 2006, through the end of plaintiff's employment (Df's Resp. at 2 [96]); Tanga Hoskins, the Assistant Terminal Manager at the Global II facility at times during plaintiff's employment, who lived with and eventually married Collins; and Shequita Sims, Hoskins' daughter, who also worked at the Global II facility at times during plaintiff's employment. (The record before us does not indicate whether Sims is Collins' biological or adopted daughter.)

Specifically, plaintiff alleges that beginning in early 2006, Ms. Sims made repeated threats to plaintiff that plaintiff would be attacked if she interfered with Ms. Sims' boyfriend, another employee at the facility. Plaintiff asserts that when she reported those threats to Collins, he called a meeting between plaintiff and Sims and told them that if they were going to fight, to "Do it out of the yard." Plaintiff also alleges

---

[1] The Second Amended Complaint appears to contain typographical errors for the years listed for various incidents. This opinion sets forth what this Court understands, based on the record before it, to be the correct years for the incidents summarized.

that Collins did nothing to deter Sims, his significant other's daughter, from continuing to threaten plaintiff.

Subsequently, in 2006, plaintiff reported late to work after having received a traffic speeding ticket. The next day, Collins suspended her, calling the ticket a "forgery." Plaintiff's union interceded, and plaintiff was reinstated with pay. During the grievance hearing, plaintiff alleges she heard Collins state that "If I have to take her back to work, and pay her, I will get her."

Beginning in 2007, plaintiff contends that Hoskins ignored complaints from plaintiff as well as other lot check clerks regarding one vehicle's leaking of carbon monoxide in the cab. Plaintiff asserts that after those complaints were raised with the union, and the vehicle was tested, deemed unsafe, and sold by defendant, Hoskins stated she was going to "get even" with plaintiff.

Plaintiff alleges that, based on her continued harassment by Collins, Hoskins, and Sims, in the Spring of 2007, plaintiff faxed a message to Mary Hayes, defendant's vice president of human resources. (*See* Pl's Facsimile to Hayes dated 6/18/07, included in defendant's group exhibit of all documents it produced responsive to the information sought in plaintiff's Request for Production V [113-6 at 26-29].) In that fax, plaintiff mentioned "Bart [Collins]," "Tanga [Hoskins]," and "her daughter" (Shequita Sims) by name, asserted she was being "harassed," and indicated, among other things, that she feared for her safety. (*Id.*) Plaintiff contends she received no response from Hayes or anyone else employed by defendant.

On December 8, 2007, plaintiff alleges she overheard Sims state "I am going to beat you up." Later that day, Sims' boyfriend asked plaintiff for a ride home. They

3

drove to a gas station, where Sims physically attacked plaintiff. Plaintiff reported the attack to Collins the next day, who stated that since the incident took place off the job site, he could not to anything about it, unless someone reported that they had personally seen Sims follow plaintiff's car as it left the Global II facility parking lot. Thereafter, plaintiff filed a criminal charge against Sims, and contacted defendant's president, Charles Connors, regarding the assault, the criminal charge, and her troubles on the job. Plaintiff asserts Connors responded "Where there's smoke, there's fire," and stated that he will "look into it." Plaintiff contends Connors never got back to her regarding those issues.

In March 2008, Sims pleaded guilty to plaintiff's assault charge, and was ordered separated from plaintiff and barred from coming near plaintiff's home or the school attended by plaintiff's then 6-year-old daughter. Plaintiff contends her union told her it would handle the matter for her with Collins and defendant. According to plaintiff, Collins maintained his position that he could not do anything because the incident occurred off the job site, and never approached plaintiff to discuss the issue.

Plaintiff asserts she reported to work and continued to do her job without another incident throughout the remainder of March and April 2008. However, after 5 pm on Friday, May 2, 2008, defendant's Director of Safety, Margaret Snook, approached plaintiff and said her behavior was abnormal, her pupils were dilated, and she was acting suspiciously. Plaintiff contends she denied the accusations and asked to speak with a union representative. Apparently, a union representative was unavailable because Snook approached her after 5 pm. Snook then personally accompanied plaintiff to Concentra Testing Labs ("Concentra") for a drug test. Plaintiff provided a

4

urine sample, but Concentra determined that the temperature of her sample was "too cold" and requested plaintiff provide a second sample within a two-hour window. However, plaintiff left the lab without providing that second sample. Plaintiff alleges she left after receiving a cell phone call informing her that her daughter was having an asthma attack and difficulty breathing. Before leaving to take her daughter to the hospital, plaintiff asked Concentra if she could leave another sample, but "the request was denied."

Upon reporting to work on May 5, 2008, plaintiff, Collins, and the union had a grievance meeting. At that meeting, Collins refused to afford plaintiff another opportunity to take a drug test. Plaintiff asserts Collins stated plaintiff would be discharged because her failure to complete the test was deemed a failure or presence of drugs, and he was within his rights to discharge her. Plaintiff received her termination notice the next day. Collins authored that notice, which listed as "cc" recipients "Mary Hayes," "Kevin Harrington," "company file," "Marcus Harris-Local 705 Teamsters," and "Wayne Herring-Union Steward." (Rev. Mot. at Ex. 13-2 [88-10].)

Plaintiff alleges that Snook, who demanded plaintiff take the drug test in the first instance, is "another daughter of Bart Collins," and indicates that Snook's request was a "ruse" to manufacture a reason to discharge plaintiff. On June 18, 2008, the union held another grievance meeting between plaintiff and Collins, at which Collins refused to revoke plaintiff's discharge.

## II.  PROCEDURAL HISTORY

On July 24, 2008, plaintiff filed a Notice of Charge of Discrimination against defendant with the United States Equal Employment Opportunity Commission ("EEOC").  (Rev. Mot. at Ex. 3 [88-4].)  That notice made general assertions of race, sex, and retaliation claims in violation of Title VII.  It did not identify by name those of defendant's employees who allegedly engaged in unlawful conduct against her. Defendant received notice of that filing on July 29, 2008.  (Df's Am. Supp'l Br. at 5 [128].)  The EEOC issued a "Right to Sue" letter to plaintiff on August 1, 2008 [88-2].  In that letter, the EEOC stated that, "[b]ased upon its investigation, [it] is unable to conclude that the information obtained establishes violations of the statutes."  (*Id.*)

Plaintiff filed her original complaint against defendant in this Court on November 3, 2008.  (Compl. [1].)  Her complaint identifies, among others, Collins, Hoskins, Sims, Snook, and Connors as allegedly behaving unlawfully with respect to plaintiff.  (*See, e.g., id.* at 3-5.)  Plaintiff filed her First Amended Complaint before defendant answered [11], and filed her Second Amended Complaint [25] after the District Court dismissed her National Labor Relations and age discrimination claims [20].

On August 20, 2009, the District Court referred this case to this Court [31].  On November 10, 2009, this Court directed the parties to review its Standing Order for Electronic Discovery and to submit a copy of their agreement regarding ESI by November 20, 2009 [39].

In a November 18, 2009 letter from defense counsel to plaintiff's counsel, defense counsel stated that plaintiff's counsel told him on November 17 that plaintiff would seek electronic discovery regarding, among other things, Collins' emails related

6

to plaintiff.  (Rev. Mot. at Ex. 6 [88-7].)  Defense counsel further stated:

> Defendant is now on notice that you intend to seek this information in
> discovery.  Therefore, in addition to steps that Defendant has already
> taken to preserve other documents and electronically-stored information
> that it determined may be relevant to this case, Defendant will take
> appropriate steps to preserve this information.  On this issue, please note
> that e-mails of H & M employees that are assigned a computer are kept on
> that individual's computer.  If an H & M employee assigned a computer
> leaves H & M's employ, that individual's computer is wiped clean and the
> computer is reassigned to another individual.  Bart Collins was terminated
> on September 2, 2008, before Plaintiff filed either a charge of
> discrimination or her initial Complaint in this matter.  As a result, any e-
> mails or other information that Bart Collins had on his computer were
> destroyed before Plaintiff filed her charge.

(*Id.*)  Notably, defense counsel's letter was incorrect in stating that Collins' termination

occurred before plaintiff filed her EEOC charge, as she filed that charge on July 24,

2008.  In any event, plaintiff was on notice in November 2009 that at least some

potentially relevant ESI – to the extent it once existed – might not be available for

discovery in this matter.

The parties submitted a copy of their "Agreement Regarding Electronic

Discovery" to this Court's Chambers on December 1, 2009.  (*See* Order dated 11/23/09

[42]; Rev. Mot. at Ex. 5 [88-6].)  In that Agreement, the parties stated that, during a

November 30, 2009 conference, plaintiff's counsel identified certain individuals from

whom plaintiff intended to seek discovery of ESI.  Those individuals included Collins, as

well as Mary Hayes and Kevin Harrington, two of the recipients of defendant's

termination letter to plaintiff.  (Rev. Mot. at Ex. 5 at 1.)  The parties agreed that "any

keyword searches for ESI shall include the following words: "Ehnae," "Northington," and

"Ehnae Northington."  (*Id.* at 2.)  The Agreement thereafter states: "With this notice,

Defendant has taken appropriate steps to preserve ESI of these individuals."  (*Id.*)

Fact discovery in this case closed on April 21, 2010 [50, 53]. In March 2010, plaintiff served document requests and interrogatories on defendant. In her Request for Production V, entitled "Emails and Electronic Records," plaintiff sought:

> A. Emails and electronically stored data in the defendant's computers and more importantly stored in its electronic storage facilities ("servers") containing the words Ehnae Northington, Northington, and Ehnae, subject to Agreement of Counsel in this case, years 2005--2008; B. Such storage containing said names in any other database; C. All data not containing said names but pertaining to plaintiff's drug test, in May, 2008, the assault by Sequita Sims on her in Dezember, 2007, the guilty plea and Court Order of March, 2008, and efforts to discharge plaintiff for any reason; D. Personal and/or shared memos or notes of telephone conversations from plaintiff to Charles Connors, and/or Mary Hayes, by said recipients, to other H & M officers and employees, electronically stored, by H & M [sic].

(Pl's Initial Doc. Req. at 4, attached as Ex. to Pl's Mot. to Compel [59-3].) By entitling this Request as one for "Emails and Electronic Records," plaintiff's counsel evidently opted – for reasons not explained to this Court – to limit plaintiff's request for ESI to only those materials requested in connection with plaintiff's Request for Production V. Plaintiff did so after being notified that at least some of Collins' ESI – to the extent he had any – might have been destroyed.

Defendant objected to plaintiff's Request for Production V on vagueness, irrelevance, overbreadth, and privilege grounds, among others. (Df's Objections & Resps. to Pl's Initial Doc. Req. at 8-9, attached as Ex. to Pl's Mot. to Compel [59-6].) Defendant also produced ten pages of documents in response to that Request. (*Id.*)[2]

Plaintiff, evidently unhappy with defendant's response to that, as well as other,

---

[2] In the list of exhibits to plaintiff's motion, plaintiff states there are "[t]hirteen pages of produced ESI identified by defendant as responsive to plaintiff ESI request to produce [sic]." (Pl's Rev. Mot. at 14 [88].) However, by this Court's count, defendant produced only ten pages. Regardless, that discrepancy is immaterial to this Court's ruling on the pending motion.

discovery requests, filed a motion to compel on May 12, 2010 [57]. In a May 13, 2010

letter submission to this Court, plaintiff indicated that she had agreed to narrow the

scope of Request for Production V to the following:

> b  the meeting Collins held during summer, 2006, to tell Sims and plaintiff that if they were going to fight, do it outside the yard, etc..
> d. the F150 Fort truck incident concerning excessive carbon monoxide;
> e.  Plaintiff's fax to Mary Hayes dated 18. June, 2007, H & M 000455-459; DX 9, 10;
> f. Plaintiff's telephoning Connors, and their conversation, emails from Connors to Global II and others regarding a lowly inventory clerk at Global II reaching him personally; and the follow-up visit to Chicago by the H & M Officer in charge of railroad business;
> g. Sims' assault and battery, December, 2007
> h. Sims' guilty plea in Circuit Court, March, 2008;
> i. eMails during March -- June, 2008 referring to the plan to make plaintiff take a drug test in hopes it would provide a basis to discharge her, correspondence back and forth to New Jersey, intra Global II exchanges, and eMails back and forth with Concerta;
> j. eMails referring to and discussing the drug test and is aftermath, May-June, 2008;
> l. eMails during the summer of 2008 and up to time of termination of employment of Collins and his wife Tanga Hoskins Collins; [sic]"

(Ex. A to Pl's 5/13/10 Letter [60-2].)  Again, in narrowing Request for Production V,

plaintiff voluntarily limited the ESI she sought in this matter to only those items set forth

in that narrowed Request, after being on notice that at least some of Collins' ESI – to

the extent he had any – might have been destroyed.[3]

In its brief in response to plaintiff's motion to compel, defendant stated that it had

---

[3]  In her revised motion's recitation of her narrowed Request for Production V, plaintiff inserts the words "and faxes" after the word "eMails" in items i, j, and l.  (Pl's Rev. Mot. at 2.) This Court has previously admonished plaintiff that she may not expand her discovery requests via a motion filed after the close of fact discovery [62].  As a result, this Court considers the items listed in plaintiff's May 13, 2010 submission to this Court [60-2] as the universe of ESI plaintiff sought from defendant in this matter.

already produced all documents in its possession, custody, or control responsive to plaintiff's narrowed Request. (Df's Resp. to Pl's Mot. to Compel at 5 [63].) After a May 26, 2010 status hearing, this Court ordered defendant to certify as such in writing to plaintiff by May 27, 2010 [65]. Because plaintiff did not bring to this Court's attention any failure by defendant to so certify, on June 29, 2010, this Court struck as moot the portion of plaintiff's motion to compel addressing Request for Production V [77].

On August 2, 2010, plaintiff appealed to the District Court this Court's June 29, 2010 order [81]. The District Court overruled her objections as untimely [83]. On August 4, 2010, plaintiff filed a motion for reconsideration of our June 29, 2010 order [84]. Plaintiff failed to notice that motion for hearing, and during a status hearing later in the day of August 4, 2010, improperly sought to submit in open court a memorandum and exhibits in support of that motion. This Court directed plaintiff to properly and completely electronically file on this Court's CM/ECF system any motion for which she sought this Court's consideration, and to notice such motion for hearing in accordance with this Court's Case Management Procedures [85].

On August 16, 2010, plaintiff filed the pending "Revised Motion for Proper Sanction for Failure to Produce Electronically Stored Information" [88]. Thereafter, this Court denied without prejudice plaintiff's motion for reconsideration, as plaintiff had not filed any memoranda or exhibits in support of that motion, and that motion sought sanctions that plaintiff had never requested in connection with her earlier motion to compel [93]. We also stated that we would consider plaintiff's request that defendant be sanctioned for alleged discovery misconduct in connection with plaintiff's Revised Motion for Proper Sanction. (*Id.*)

III.     **THIS COURT'S PRIOR ORDERS REGARDING THE PENDING MOTION**

The parties completed their submission of the initial briefing and exhibits on this motion on September 9, 2010. After reviewing those submissions [88, 96, 97], as well as applicable case law, this Court concluded that defendant's duty to preserve evidence related to this matter was triggered no later than when defendant received notice that plaintiff had filed, on July 24, 2008, a discrimination charge against it with the EEOC. (*See* Written Opinion dated 10/5/10 [99].) Among other things, we noted that 29 C.F.R. § 1602.14 states that, "Where a charge of discrimination has been filed ..., the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or action...." *See also Jones v. Bremen High School Dist. 228*, No. 08-3548, 2010 WL 2106640, at \*6 (N.D. Ill. May 25, 2010) (employer's duty to preserve relevant documents arose at the time it learned employee had filed EEOC charges), *objections/appeal filed*, No. 08-3548, ECF Doc. No. 73 (N.D. Ill. June 6, 2010); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (employer's duty to preserve back-up tapes of emails of certain supervisors and coworkers involved in alleged gender discrimination arose, at the latest, when employee filed her EEOC charge); *Wells v. Berger, Newmark & Fenchel, P.C.*, No. 07-3061, 2008 WL 4365972, \*7 (N.D. Ill. Mar. 18, 2008) (employer's duty to preserve sexually explicit emails began when employer received notice of sexual harassment charge filed by employee with state department of human rights).

Based on our conclusion regarding the date on which defendant's duty to preserve was triggered, we directed defendant to submit supplemental briefing and declarations regarding its efforts to preserve evidence in this case [99]. We sought,

11

among other things, information regarding twelve specific issues related to defendant's duty to preserve. We also directed defendant to attach, as a group exhibit, a copy of all documents defendant produced responsive to the information sought in plaintiff's Request for Production V, whether or not those documents were created or maintained electronically, and whether or not those documents are responsive to plaintiff's original Request or that Request as narrowed in her 5/13/10 submission to this Court. Finally, we directed plaintiff to file a response to defendant's submission.

After reviewing the parties' supplemental submissions [112, 113, 121], which included declarations from nine of defendant's employees,[4] we concluded that defendant's submissions did not clearly, concisely, or completely respond to each of the twelve issues identified by the Court. (*See* Written Opinion dated 12/8/10 [126].) We also noted that plaintiff's response to defendant's supplemental brief brought to the Court's attention for the first time a Consent Decree entered into by defendant and the EEOC in November 2006. (*See* Ex. 1 to Pl's Resp. [121-1].) That Decree relates to past allegations made by the EEOC and another former employee that defendant "failed to take reasonable action to stop and prevent sexual harassment" [121-1 at 1]. It also imposed certain record-keeping requirements on defendant, as follows:

<u>Record Keeping and Reporting</u>

16.　　For the [two year] duration of this Decree, Defendant shall maintain reports containing the name, address, and telephone number of each employee who complains of sexual harassment. Such reports shall indicate the date the complaint was made, who made it, what

---

[4] Specifically, defendant submitted the declarations of Mary Hayes, Michael Hosmer, Ritesh Shastri, James Giaquinto, Kevin Harrington, Timothy Newcomb, Margaret Snook, James Hamilton, and Kevin Loy.

was alleged, and what actions Defendant took to resolve this matter.

17.    Defendant shall furnish to the EEOC written reports every six months for the term of this Decree.  The first report shall be due six (6) months after entry of the Decree.  Each such report shall contain the name and address of each employee who, in the preceding six months, complained of sexual harassment, and the nature of the complaint.  If no employee made such a complaint an officer of Defendant shall submit a signed statement so stating.  If requested by the EEOC, the Defendant shall make documents or records related to such complaints and referred to in Paragraph 16 available for inspection and copying within five business days after the EEOC so requests.  Defendant shall also make available on five business days notice either its Vice President of Operations or Human Relationship Manager, should the EEOC request to interview such person for purposes of verifying compliance with paragraphs 17 and 17 [sic].

[121-1 at 5-6.]

As a result, we ordered defendant to submit an amended supplemental brief that directly and specifically addressed each of the issues set forth in our 10/5/10 Written Opinion, as well as the additional issues set forth in our 12/8/10 Written Opinion [126]. We also ordered plaintiff to file an amended response.  The parties have filed those submissions [128, 129], and we have considered them in connection with our Report and Recommendation herein.

## IV.    DEFENDANT'S PRESERVATION EFFORTS

As noted above, plaintiff filed her EEOC charge against defendant on July 24, 2008, and defendant received notice of her charge on July 29, 2008.  At that time, defendant states it did not have a formal or written document retention policy or a formal or written policy governing the operation of its electronic information system.  (*See* Decl. of Mary Hayes ¶ 8 [112-1]; Decl. of Michael Hosmer ¶ 2[112-2].)  It was and is the

13

"regular business practice" of Hayes, defendant's vice president of human resources, to "immediately gather, copy, and preserve all relevant hard copy documents as well as all electronic hard copy communications and documents that *are sent to her*" that relate to an employee who files an EEOC charge. (Hayes Decl. ¶¶ 6, 12 (emphasis added).)

All other electronic data retention and the recycling of defendant's computer hardware was evidently handled on an *ad hoc*, case-by-case basis. (Hayes Decl. ¶ 8; Hosmer Decl. ¶ 2.) With respect to its electronic information system, defendant asserts that in 2007, 2008, and 2009, its email system was hosted by a company called First Scribe. (Hosmer Decl. ¶ 10.) Employees of defendant who were assigned a work computer could use Outlook to access their email account. If such an employee did so, any emails he opened would have been downloaded to his work computer and deleted from First Scribe's email server. (*Id.*) The email would remain on the employee's work computer until manually deleted by the employee. (*Id.*) First Scribe's data backup system retained email on its server at the time of the backup's execution. First Scribe retained backups of defendant's email for seven days. (*Id.*) On the eighth day, the oldest backup file would be deleted and the current information would be added to the saved information. (*Id.*)

Alternatively, in 2007, 2008, and 2009, defendant's employees could access their email account via a "web-mail client," by going to First Scribe's website and entering their credentials. (Hosmer Decl. ¶ 11.) The employee could then view his emails, which remained on the First Scribe server following viewing. (*Id.*) No content from such an account would be downloaded to the computer used to access the web-mail client. (*Id.*)

According to Michael Hosmer, defendant's executive vice president for

information technology, in 2008, when an employee was separated from defendant, it was Hosmer's regular business practice to remotely access the First Scribe server within a few days of being informed of the employee's separation and permanently delete that employee's email account and any data associated with it. (Hosmer Decl. ¶ 14.) Hosmer also avers that defendant does not have a document management or other system that independently stores user-created content. (*Id.* ¶ 20.)

In July 2008, when defendant received notice of plaintiff's EEOC charge, Hayes avers she followed her regular business practice by copying and preserving plaintiff's human resources personnel file, and by contacting Global II and requesting that any documents at that facility pertaining to plaintiff be placed in the on-site file, copied, and sent to Hayes. (Hayes Decl. ¶ 7.) Hayes further avers that she "*believes* that she contacted Collins in July 2008 and instructed him to preserve all documents at Global II pertaining to Plaintiff." (2d Decl. of Mary Hayes ¶ 4 (emphasis added) [128-1].) Hayes states that she also retained "all of the electronic communications or documents that Collins sent to Hayes, or that Hayes sent to him, regarding Plaintiff." (*Id.* ¶ 12.)

In September 2008, Collins' and Hoskins' employment with defendant ended. Hosmer avers that, when notified of their "resignations," he followed his "regular business practice," remotely accessed the First Scribe server and "permanently deleted" Collins' and Hoskins' email accounts, as well as any data associated with those accounts. (Hosmer Decl. ¶ 16.) Hosmer contends that because Collins and Hoskins were assigned to defendant's Global II facility, they were required to use the web-mail client to access their email accounts, and thus no content from those accounts was downloaded to a computer at that facility. (*Id.* ¶ 13.)

15

Additionally, after Collins' resignation in September 2008, the computer formerly assigned to him was used by various other Global II employees. (Decl. of Kevin Loy ¶ 3 [112-9].) According to Collins' replacement, Kevin Loy, sometime in mid-2009, that computer either crashed or had a virus that required it to be serviced or replaced. (*Id.* ¶ 4.) Loy then shipped that computer to defendant's headquarters. (*Id.*) At that time, it was defendant's "routine" practice to discard hard drives that were replaced in the course of servicing defendant's hardware. (Hosmer Decl. ¶ 8; Decl. of Ritesh Shastri ¶ 9 [112-3].) As a result, defendant believes that the hard drive originally installed in the computer formerly assigned to Collins was discarded some time between August and October 2009. (*Id.*) Evidently, none of defendant's information technology employees had knowledge of plaintiff's EEOC charge or the instant lawsuit at any time prior to October 2009. (Hosmer Decl. ¶ 9; Shastri Decl. ¶ 10; Decl. of James Giaquinto ¶ 10 [112-4].)

Defendant asserts that defense counsel began giving defendant advice regarding the assessment of what constituted potentially relevant evidence in November 2008.[5] (Df's Am. Supp'l Br. at 10.) On November 18, 2008, approximately two weeks after plaintiff filed her complaint in this matter, Hayes sent Connors an email asking if he had "any documentation" regarding a specific allegation involving Connors set forth in plaintiff's complaint. [112-1 at 25.] According to Hayes, Connors verbally informed her

---

[5] Defendant asserts its counsel's involvement was "delayed" due to the fact that plaintiff's EEOC charge indicated that "No action is required by you at this time," defendant was not required to submit a position statement or response to request for information regarding plaintiff's charge, and Hayes was already undertaking preservation efforts pursuant to her regular business practice. (Df's Am. Supp'l Br. at n.7.)

that he did not have any such documents.  (Hayes Decl. ¶ 19.)

As described above, approximately one year later, in November 2009, plaintiff's counsel and defense counsel met to discuss discovery of ESI.  Thereafter, for the first time, in November and December 2009, Hayes sent emails directing various custodians to take "all necessary steps" to preserve all documents and ESI concerning plaintiff, and to search their computer hard drives for the key words "Ehnae," "Northington," and "Ehnae Northington."  (Hayes Decl.  ¶¶ 21, 23, 26, 32, 40, 42, 44.)  Specifically, Hayes contacted Harrington, defendant's senior vice president of rail operations (and a "cc" recipient of plaintiff's termination notice); Timothy Newcomb, defendant's director of operations; Snook; Sims; Linda Hearn, defendant's operations manager (and plaintiff's biological mother); and Hosmer.  (*Id.*)  Hayes also personally searched her and Connors' hard drives for those terms.  (Hayes Decl.  ¶¶ 13, 20.)

On December 2, 2009, Hayes sent a one-page memo to Hosmer regarding preservation of ESI related to plaintiff.  (Hayes Decl. at Ex. A [112-2 at 8].)  In that memo, Hayes instructed defendant's "Information Technology Staff" to, among other things, "take all steps necessary" to preserve all ESI concerning plaintiff, including email and instant messages "with or about" plaintiff that may be found on defendant's servers, hard drives, laptops, hand-held devices, or any backup tapes.  (*Id.*)  That memo also instructed Hosmer to"[d]isable any computer programs that automatically destroy potentially relevant information, such as e-mail and instant messages," "[t]emporarily remove from the recycling routine any back-up tapes for the [December 12, 2005 to June 20, 2008] time period that may contain discoverable information," and "[d]etermine the feasibility of storing the hard drives of the computers used by [Connors, Harrington,

17

Hayes, Newcomb, Collins, Hoskins, and Sims] until it can be determined whether it would be cost prohibitive, to create a mirror image of those hard drives." (*Id.*)

In January 2010, defendant migrated its email system from First Scribe to another third-party vendor, Rackspace. (Hosmer Decl. ¶ 18.) Prior to that migration, on November 17, 2009, Hosmer sent an email to all potentially active employee email accounts notifying the recipients that defendant was preparing for a transition to Rackspace. (*Id.*) Hosmer states that "[a]ccounts that did not respond were deemed inactive," and that, "[a]s a cost saving measure, neither inactive accounts, their associated data, nor legacy data from prior deleted accounts were migrated over to Rackspace from First Scribe." (*Id.*) Hosmer avers that because the email account assigned to Sims did not respond to his email, Sims' account "was deemed inactive and therefore deleted before the transition to Rackspace." (*Id.*)

In response to this Court's October 5, 2010 Written Opinion, Hayes avers that she "conducted a thorough reinvestigation" of the ESI located on her assigned work computer and "the locations of potentially relevant data, electronic or otherwise." (Hayes Decl. ¶¶ 45, 46.) In the course of that investigation, Hayes located, among other things, a May 2008 email from Snook related to plaintiff not previously found because plaintiff's name was misspelled therein. (*Id.* ¶ 45.) Based on Hayes' "reinvestigations," as well as documents in the custody of Snook but not previously provided to Hayes, on October 22, 2010, defendant produced approximately sixty additional pages of documents to plaintiff. (Df's Am. Supp'l Br. at n.6; Hayes Decl. at Ex. H.) Defendant argues the information contained within those documents either consists of general employment information regarding plaintiff that had already been

18

provided to her during discovery, or further establishes defendant's legitimate reason to terminate plaintiff, *i.e.*, her "refusal to take a drug screen." (*Id.* at 9, n.6.)

In total, defendant produced 466 pages of documents responsive to the information sought in plaintiff's Request for Production V. (*See* Df's Supp's Br. at Exs. 10 & 11 [113, 113-1-10].)

## V.     LEGAL STANDARDS

### A.     Duty to Preserve Evidence

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "This broad duty of disclosure extends to all documents that fit the definition of relevance for the purposes of discovery – whether the documents are good, bad, or indifferent." *Danis v. USN Communications, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *1 (N.D. Ill. Oct. 20, 2000). This disclosure duty would be a "dead letter" if parties could avoid it by simply failing to preserve documents they do not wish to produce. *Id.* "Therefore, fundamental to the duty of production of information is the threshold duty to preserve documents and other information that may be relevant in a case." *Id.*

A party's duty to preserve extends to evidence over which it had control and "reasonably knew or could reasonably foresee was material to a potential legal action." *China Ocean Shipping (Group) Co. v. Simone Metals Inc.*, No. 97 C 2694, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999) (collecting cases). Put another way, a party must preserve evidence that is properly discoverable under Rule 26. *Wiginton v. Ellis*,

19

No. 02 C 6832, 2003 WL 22439865, at *4 (N.D. Ill. Oct. 27, 2003). Discoverable

evidence includes electronic data such as email. *Id.*; *Byers v. Illinois State Police*, No.

99 C 8105, 2002 WL 1264004, at *10 (N.D. Ill. June 3, 2002). Rule 34(a)(1)(A), in both

its current version and the version in effect at the time plaintiff filed her EEOC charge,

expressly contemplates that parties may seek discovery of ESI:

> (a)   In General. A party may serve on any other party a request within
> the scope of Rule 26(b):
> (1)   to produce and permit the requesting party or its
> representative to inspect, copy, test, or sample the following
> items in the responding party's possession, custody, or
> control:
> (A)   any designated documents or electronically stored
> information – including writings, drawings, graphs,
> charts, photographs, sound recordings, images, and
> other data or data compilations – stored in any
> medium from which information can be obtained
> either directly or, if necessary, after translation by the
> responding party into a reasonably usable form.

"A party fulfills its duty to preserve evidence if it acts reasonably." *Jones,* 2010

WL 2106640, at *6; *see also Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th

Cir.1992) (fault for discovery violation rests on the reasonableness of the party's

actions). "The duty to preserve documents in the face of pending litigation is not a

passive obligation. Rather, it must be discharged actively." *Danis*, 2000 WL 1694325,

at *32. That obligation "requires that the agency or corporate officers having notice of

discovery obligations communicate those obligations to employees in possession of

discoverable materials." *Nat'l Assoc. of Radiation Survivors v. Turnage*, 115 F.R.D.

543, 557-58 (N.D. Cal. 1987). As a result, a party cannot defend its failure to preserve

relevant evidence by arguing that its employees who disposed of such evidence

documents were not on notice of the issues involved in the lawsuit or the relevancy of

such documents. *Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1995 WL 519968, at n.9 (N.D. Ill. Aug. 30, 1995). Additionally, "[a] party cannot destroy documents based solely on its own version of the proper scope" of its document retention responsibilities. *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *11 (N.D. Ill. Aug. 18, 2005) (*quoting Diersen v. Walker*, No. 00 C 2437, 2003 WL 21317276, at *5 (N.D. Ill. June 6, 2003). Instead, "a party can only narrow the scope of its document retention policies pursuant to court approval." *Id.*

A party does not have to go to "extraordinary measures" to preserve all potential evidence. *Wiginton*, 2003 WL 22439865, at *4 (*quoting China*, 1999 WL 966443, at *3). Nor need it preserve "every single scrap of paper in its business." *Wiginton*, 2003 WL 22439865, at *4 (*citing Danis*, 2000 WL 1694325, at *32). However, a party must preserve evidence that it has notice is reasonably likely to be the subject of a discovery request, even before a request is actually received. *Wiginton*, 2003 WL 22439865, at *4; *Cohn*, 1995 WL 519968, at *5; *Wm. T. Thompson, Co. v. Gen. Nutrition Corp.*, 593 F. Supp 1443, 1455 (D.C. Cal.1984). A party may receive notice before a complaint is filed if that party knows that litigation is likely to begin, or a party may be alerted by the complaint that certain information is likely to be sought in discovery. *Wiginton*, 2003 WL 22439865, at *4; *Cohn*, 1995 WL 519968, at *5.

## B. Sanctions for Spoliation

Courts have the inherent power to impose sanctions for abuse of the judicial system, including the failure to preserve or produce documents. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991); *Barnhill v. U.S.*, 11 F.3d 1360, 1368 (7th Cir. 1993); *Danis*, 2000 WL 1694325, at *30. The power is not based in rule or statute, but rather in the

ability of the courts to manage their own dockets and ensure the expeditious resolution of cases. *Barnhill*, 11 F.3d at 1367 (*citing Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). Courts also have the statutory authority, under Rule 37, to sanction a party for the failure to preserve and/or produce documents. *Danis*, 2000 WL 1694325, at *30. Notably, Rule 37(b)(2) sanctions are available only where a court order or discovery ruling of some sort has been violated. *See Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 n.7 (7th Cir. 1994) (noting that what constitutes an "order" for purposes of imposing sanctions under Rule 37(b)(2) has been "broadly interpreted").

In this case, while no specific order was in place directing defendant to preserve evidence, defendant repeatedly stated it had already produced all (not merely "relevant") documents in its possession, custody, or control responsive to plaintiff's narrowed Request for Production V. Based on those representations, on May 26, 2010, we ordered defendant to so certify in writing to plaintiff [65]. Defendant evidently provided that certification [*see* 77 at 2], but such certification was incorrect, as defendant produced additional responsive documents on October 22, 2010 [*see, e.g.*, 112-1 at 49-51]. However, whether or not defendant's conduct is sanctionable under any subdivision of Rule 37 is an academic issue, as the analysis for imposing sanctions under that Rule or our inherent power is "essentially the same." *Danis*, 2000 WL 1694325, at *30 (N.D. Ill. Oct. 20, 2000) (*quoting Cobell v. Babbit*, 37 F. Supp. 2d 6, 18 (D.D.C. 1999)); *accord Porche v. Oden*, No. 02 C 7707, 2009 WL 500622, at *5 (N.D. Ill. Feb. 27, 2009).

Courts have broad discretion to choose an appropriate sanction for discovery misconduct based on the unique facts of every case. *Danis*, 2000 WL 1694325, at *31

22

(*citing National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976)).  The Seventh Circuit requires that any sanctions rendered be proportionate to the offending conduct, and that the harsh sanction of default be reserved for extreme circumstances.  *Collins v.* Illinois, 554 F.3d 693, 696 (7th Cir. 2009); *Barnhill*, 11 F.3d at 1367.  "The purposes for sanctions do not support the entry of a default judgment – which deprives parties of a trial on the merits – when there is at least some evidence that allows the plaintiff to prove the case and where there are less drastic remedies available to cure the absence of certain evidence, deter others from similar conduct, and to punish the wrongdoer for destruction of this evidence."  *Danis*, 2000 WL 1694325, at *35.  Ultimately, the Court's discretion is informed by three principle factors: (1) a breach of the duty to preserve or produce documents; (2) the level of culpability for the breach; and (3) the prejudice that results from the breach.  *Id.* at *31.

With respect to the level of culpability, it is worth noting that bad faith is not a precondition to the imposition of all forms of sanctions for discovery misconduct.  *See, e.g.*, *Marrocco*, 966 F.2d at 224; *Jones*, 2010 WL 2106640, at *5; *Wiginton*, 2003 WL 22439865, at n.7.  Bad faith is required for a court to grant an adverse inference sanction.  *See Fass v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008).  *Cf. Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (noting generally that "a showing [of bad faith] is a prerequisite to imposing sanctions for the destruction of evidence," but citing as support cases addressing appropriateness of adverse inferences).  "Wilfulness" and "bad faith" are characterized by conduct which is either done intentionally, for the purpose of hiding adverse information, or in reckless disregard of a party's obligations to comply with a court order.  *Long v. Steepro*, 213

23

F.3d 983, 987 (7th Cir. 1997); *Marrocco,* 966 F.2d at 224; *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998).

Depending on the sanction imposed, "fault" – as opposed to bad faith – may form a sufficient basis for sanctions. *Marrocco*, 966 F.2d at 224; *Jones*, 2010 WL 2106640, at *5. "Fault" does not speak to the noncomplying party's disposition, but describes only the reasonableness of the conduct – or lack thereof – that eventually resulted in the violation. *Marrocco,* 966 F.2d at 224; *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997). "Fault may be evidenced by negligent actions or a flagrant disregard of the duty to preserve potentially relevant evidence." *Wiginton*, 2003 WL 22439865, at *6 (*citing Diersen*, 2003 WL 21317276, at *5); *accord Marrocco*, 966 F.2d at 224.

Rule 37(e) addresses an aspect of culpability and good faith in the context of ESI. That subdivision, entitled "Failure to Provide Electronically Stored Information," provides that, "[a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." The Advisory Committee's Notes to that subdivision clarify that "[g]ood faith in the routine operation of an information system may involve a party's intervention to modify or suspend certain features of that routine operation to prevent the loss of information, if that information is subject to a preservation obligation." Fed. R. Civ. P. 37(e) 2006 advisory committee's notes.

Finally, while prejudice is not required to impose sanctions, *Barnhill*, 11 F.3d at 1368, the prejudice to the non-offending party should be considered by the court when determining the appropriate penalty for discovery misconduct. *Marrocco*, 966 F.2d at

24

225.  In cases where spoliation is the result of "fault," as opposed to wilfulness or bad faith, courts often use prejudice as a "'balancing tool' to tip the scales in favor of or away from severe sanctions."  *Larson*, 2005 WL 4652509, at *13 (*quoting Danis*, 2000 WL 1694325, at *34).

### C.	29 C.F.R. § 1602.14

EEOC regulation 29 C.F.R. § 1602.14 states in pertinent part:

> Any personnel or employment record made or kept by an employer ...
> shall be preserved by the employer for a period of one year from the date
> of the making of the record or the personnel action involved, whichever
> occurs later.  In the case of involuntary termination of an employee, the
> personnel records of the individual terminated shall be kept for a period of
> one year from the date of termination.  Where a charge of discrimination
> has been filed ... against an employer under title VII ... the respondent
> employer shall preserve all personnel records relevant to the charge or
> action until final disposition of the charge or the action.

The regulation does not define the term "personnel records," but states that examples include "personnel or employment records" and "application forms or test papers."  29 C.F.R. § 1602.14.  "Employers are not required to keep all documents generated during the termination process, but rather must preserve 'only the actual employment record itself.'"  *Martinez v. Abbott Labs.*, 171 Fed. Appx. 528, 530 (7th Cir. Mar. 29, 2006) (finding that non-preserved pages of work order were not required to be retained under § 1602.14 as part of plaintiff's "employment record" where manager never saw or considered them in deciding to terminate plaintiff) (*quoting Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 558-59 (7th Cir. 2001)  (finding that non-preserved ranking sheets and manager's evaluation notes constituted "rough drafts or processes" that led up to the actual "employment record" itself, and thus were not required to be retained under § 1602.14)).

25

The Seventh Circuit has held that a violation of a record retention regulation "creates a presumption that the missing record[s] contained evidence adverse to the violator." *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 716 (7th Cir. 1998) (cautioning that the presumption does not attach to inadvertent failures to comply with a regulation). However, the Seventh Circuit has "intimated that, absent bad faith, a violation of 29 C.F.R. § 1602.14, the EEOC record retention regulation, would not automatically trigger an adverse inference." *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002); *accord Martinez*, 171 Fed. Appx. at 530 (noting that even if employer's destruction of an allegedly falsified complete work order violated § 1602.14, destruction occurred in normal operation of employer's document retention policy and record contained no evidence suggesting employer acted in bad faith).

## VI.    ANALYSIS

### A.    Plaintiff's Revised Motion is Not Untimely.

As an initial matter, this Court rejects defendant's argument that plaintiff's motion is untimely because she filed it "roughly four and a half months after Defendant fully responded to Plaintiff's written discovery." (Df's Resp. at 5-6.) Defendant did not "fully respond" to plaintiff's discovery requests in April 2010. In fact, based at least in part on plaintiff's pending motion and this Court's October 5, 2010 Written Opinion, defendant produced additional responsive documents to plaintiff as recently as October 22, 2010.

Further, defendant's citation to *Brandt v. Vulcan, Inc.*, 30 F.3d 752 (7th Cir. 1994) does not warrant a contrary conclusion because that case involved significantly different circumstances. There, plaintiff in a five-year-old lawsuit did not seek sanctions until the jury instruction conference, despite having been aware of defendant's possible fraud

long before trial. Here, this Court did not fully resolve issues regarding the alleged deficiencies of defendant's discovery responses until June 29, 2010 [77]. On that date, this Court completed its ruling on plaintiff's motion to compel and, among other things, struck as moot the portion of plaintiff's motion addressing Request for Production V. At the time of our ruling, the parties had not yet advised the Court that defendant had wiped clean or otherwise disposed of Collins' computer hard drive. While in hindsight it may have been preferable for plaintiff to have at least notified the Court of that fact in connection with her motion to compel, her failure to do so does not preclude this Court from considering her request for sanctions.

As defendant and the *Brandt* court recognized, Rule 37(b)(2) does not establish any time limit within which a sanctions motion must be filed. Further, "[w]hen it comes to sanctions motions, the important consideration is justice." *Large v. Mobile Tool Int'l, Inc.*, No. 1:02cv177, 2008 WL 89897, at *7 (N.D. Ind. Jan. 7, 2008) (denying defendant's request to strike sanctions motion for untimeliness). Plaintiff made her sanctions request for the first time on August 4, 2010 [84]. The lapse in time of approximately 5 weeks from the date of our order completely resolving plaintiff's motion to compel is not so unreasonable as to warrant denial of plaintiff's sanctions motion for untimeliness. Accordingly, we reject defendant's argument that the pending motion is untimely.

**B.      Defendant Violated its Duty to Preserve Evidence.**

As noted above, this Court previously held that defendant's duty to preserve

evidence related to this matter was triggered no later than when defendant received

notice that plaintiff had filed, on July 24, 2008, a discrimination charge against it with the

EEOC.  (*See* Written Opinion dated 10/5/10 [99].)

Based on the record currently before us, we now conclude that defendant

breached its duty to preserve evidence.  At the time defendant received notice of

plaintiff's charge in July 2008, defendant states that Hayes copied and preserved

plaintiff's human resources personnel file; retained the "electronic communications or

documents" regarding plaintiff that Collins or Hayes sent to each other; and contacted

Global II and requested that any documents there regarding plaintiff be copied and sent

to her.  Hayes also "believes" that in July 2008, she contacted Collins at that time and

instructed him to preserve all documents at Global II pertaining to plaintiff.

However, those steps to preserve evidence were insufficient and unreasonable

under the circumstances.  Among other things, Hayes' July 2008 preservation request

to Global II, or her "believed" instruction to Collins, did not encompass ESI at that facility

or in Collins' possession, or documents, ESI, or other evidence possessed by other

individual employees working there.  There is no indication that Hayes checked back

with Global II or Collins to ensure they had complied with her request.  Hayes made no

attempt to contact Hoskins or Sims to instruct them to preserve evidence, electronic or

otherwise, related to plaintiff, or to have someone else independently ensure that

Collins, Hoskins, or Sims did so.  Finally, defendant did not issue or implement a

litigation hold, electronic or otherwise, at that time.

28

Arguably, defendant – through Hayes or someone else – should have taken each of those additional steps to preserve evidence in July 2008, since plaintiff claimed mistreatment at the hands of those individuals in the four-page June 18, 2007 facsimile plaintiff *sent to Hayes herself*. *See Jones*, 2010 WL 2106640, at *6 (to fulfill the duty to preserve evidence, a party must take "concrete actions reasonably calculated to ensure that relevant materials will be preserved.") (citation omitted); *see also Diersen v. Walker*, No. 00 C 2437, 2003 WL 21317276, at *5 (N.D. Ill. June 6, 2003) ("A party cannot destroy documents based solely on its own version of the proper scope of the complaint."). Indeed, defendant's failure to ensure that any potentially relevant emails in Collins' or Hoskins' possession at the time defendant received notice of plaintiff's charge resulted in those emails being permanently deleted in accordance with Hosmer's regular business practice when those employees left defendant in September 2008. Further, defendant's failure to issue or implement a litigation hold as to ESI evidently led to First Scribe's deletion of potentially relevant evidence on its backup system.[6]

Even more egregious is defendant's failure to take sufficient steps to preserve evidence approximately three months later in November 2008, when plaintiff filed her complaint and specifically identified Connors, Collins, Hoskins, Sims, and Snook as allegedly having mistreated her. At that time, Hayes sent an email to Connors asking if he had "any documentation" regarding one specific allegation in plaintiff's complaint involving him. Defendant did nothing else in November 2008 to preserve evidence related to this case. Among other things, defendant did not gather potentially relevant

---

[6] As of October 22, 2010, defendant had still not contacted First Scribe regarding this litigation. (Hosmer Decl. ¶ 22.)

evidence other than that in the possession of Hayes or Connors.  It did not contact Sims

and Snook, whom defendant still employed at that time, to determine whether any

potentially relevant evidence might be in their possession.  Defendant did not search

any computers, email accounts and other sources of potentially relevant ESI.  Nor did

defendant issue or implement any form of litigation hold, electronic or otherwise.[7]

    Defendant does not argue that such measures would have been unreasonably

cost prohibitive, or overly broad given the scope of the allegations in plaintiff's

complaint.  In fact, defendant provides no explanation for its failure to do anything other

than contact Connors when it received notice of plaintiff's complaint, despite the

apparent involvement of counsel at that point in time.  (*See* Df's Am. Supp'l Br. at 11.)

However, had defendant issued an appropriate litigation hold that notified its information

technology department of the lawsuit and the need to preserve potentially relevant

evidence, Collins' computer hard drive might not have been wiped clean or otherwise

disposed of sometime between August and October 2009.[8]

    It was not until November and December 2009 – fifteen months after plaintiff filed

her EEOC charge, and a year after she filed her complaint – that defendant took any

additional steps to preserve relevant evidence.  Those steps included Hayes contacting

Connors, Harrington, Hayes, Newcomb, Sims, Snook, Hearn, and Hosmer, and

instructing them to search for certain potentially relevant evidence related to plaintiff,

---

[7] Indeed, none of defendant's information technology employees had knowledge of plaintiff's EEOC charge or the instant lawsuit at any time prior to October 2009.

[8] While several of defendant's declarants indicate that Collins' hard drive either crashed or had a virus, defendant has submitted no evidence establishing that the ESI contained therein would have been unsalvageable.

and issuing a litigation hold as to potentially relevant ESI via Hayes' December 2, 2009

memo to Hosmer.  However, other than Connors' hard drive, defendant never tasked

anyone other than the custodians themselves to search their computer hard drives, hard

copy documents, or other sources for potentially relevant evidence.  Besides being

grossly belated, those additional preservation efforts were unreasonable:

> It is unreasonable to allow a party's interested employees to make the
> decision about the relevance of such documents, especially when those
> same employees have the ability to permanently delete unfavorable email
> from a party's system ....  Most non-lawyer employees, whether marketing
> consultants or high school deans, do not have enough knowledge of the
> applicable law to correctly recognize which documents are relevant to a
> lawsuit and which are not.  Furthermore, employees are often reluctant to
> reveal their mistakes or misdeeds.

*Jones*, 2010 WL 2106640, at *7; *see also Cache La Poudre Feeds, LLC v. Land

O'Lakes, Inc.*, 244 F.R.D. 614, 630 (D. Colo. 2007) (noting that "simply accept[ing]

whatever documents or information might be produced by [its] employees," without

preventing defendants from clearing the hard drives of former employees, was

improper).

Finally, it is evident that the instructions in Hayes' December 2009 litigation hold

memo to Hosmer were either partially ignored, or issued too late to prevent the

destruction of additional potentially relevant ESI.  Hosmer's declaration indicates that,

sometime between November 2009 and January 2010, as part of defendant's transition

of its email system from First Scribe to Rackspace in January 2010, Hosmer deleted

Sims' email account.  Defendant does not clarify whether that deletion occurred before

or after Hosmer received Hayes' memo.  Moreover, defendant provides no explanation

as to how that deletion could possibly be consistent with defendant's duty to preserve

evidence in this case.

### C.    Defendant Did Not Act Wilfully or in Bad Faith, But is At Fault.

As set forth above, to determine the appropriateness of sanctions and the appropriate level of sanctions for the destruction of evidence, we must determine whether defendant acted wilfully, in bad faith, or is merely at fault. Based on the record before us, we cannot conclude that defendant acted wilfully or in bad faith. Among other things, there is no evidence demonstrating that defendant intended to withhold unfavorable information from plaintiff. *See Mathis*, 136 F.3d at 1155. Nor is there any evidence that defendant disposed of documents in violation of its own policies. *See Park*, 297 F.3d at 615.

However, the evidence before us overwhelmingly demonstrates that defendant was grossly negligent in its attempts to secure relevant documents. *See Jones*, 2010 WL 2106640, at *8. Among other things, as the Court found in *Jones*:

> Defendant relied upon its employees – the same employees whose conduct was at question in the lawsuit – to select the documents they felt were relevant. These employees had no legal training. Furthermore, if the employees had racially harassed plaintiff, they would have had both professional and personal motives for concealing evidence of that harassment. It is inconceivable that defendant was unaware of these motives; the fact that defendant still allowed the employees to make their own determinations on relevancy is proof of defendant's recklessness.

*Id.* Further, defendant's failure to seek documents from more than three employees – Hayes, Collins, and Connors – at the time plaintiff filed her complaint also constitutes gross negligence. While plaintiff's EEOC charge did not name specific persons, her complaint did. Yet defendant waited a year before making any effort to contact, among others, Sims and Snook, two of the individuals most integrally involved in plaintiff's

allegations of mistreatment. Defendant's year-long failure to ask them to preserve relevant evidence – and to independently ensure they did not destroy such evidence – "goes beyond ordinary mistake into gross negligence." *Jones*, 2010 WL 2106640, at *8.

Additionally, the Consent Decree defendant entered with the EEOC in November 2006 required defendant for a two-year period to furnish reports to the EEOC regarding complaints of sexual harassment. It also required defendant, "[i]f requested by the EEOC," to "make documents or records related to such complaints ... available for inspection and copying ...." According to the limited record submitted by the parties on this issue, it appears that, on November 15, 2007, defendant reported to the EEOC that one complaint of sexual harassment had been made in the last six months [129-3]. While plaintiff sent her facsimile to Hayes on June 18, 2007, it is unclear whether defendant considered that a sexual harassment complaint for purposes of the Decree. Ultimately, the record before us does not reveal when, precisely, the complaint referenced in the November 2007 report was made, or whether it was made by plaintiff. More importantly, plaintiff does not appear to argue – much less cite any supporting authority – that the Consent Decree required defendant to retain all information, including ESI, related to any complaint of harassment she made to defendant at any time before she filed her EEOC charge. As a result, and given the timing of defendant's duties under the Decree as well as plaintiff's EEOC charge, we conclude that the Consent Decree imposed a preservation duty on defendant that was, at most, coextensive with its duty to preserve evidence in this case. Stated another way, the Consent Decree served as an additional form of notice to defendant that its duty to preserve evidence attached as of the date plaintiff filed her EEOC charge.

33

The record before us reveals other deficiencies in defendant's preservation efforts, though they are relatively minor in light of the ones described above. For example, in November and December 2009, Hayes instructed various employees to search certain sources of ESI for only three key terms, "Ehnae," "Northington," and "Ehnae Northington." However, the misspelling of two of those terms ("Ehnae" and "Ehnae Northington") would – and evidently did in Hayes' case (Hayes Decl. ¶¶ 45, 46) – fail to obtain potentially relevant evidence. Further, in November 2008, when Hayes contacted Connors regarding plaintiff's complaint, her email asked if he had any information pertaining only to one allegation of plaintiff's complaint, as opposed to whether he had any information pertaining to her complaint generally. (Hayes Decl. at Ex. B.) Additionally, in November 2009, Hayes evidently instructed Harrington to search his emails only from March 8, 2008 to June 20, 2008. (Id. ¶ 21.) Defendant provides no explanation for so limiting the time period or ESI at issue with respect to Harrington.

Based on the above considerations, we conclude defendant is at fault for spoliation. While not necessary to our conclusion, we reject defendant's argument that it "could not reasonably foresee" the full scope of potentially relevant ESI merely from analyzing the allegations in plaintiff's EEOC charge and complaint. (Df's Am. Supp'l Br. at 18-19.) As noted above, discoverable evidence includes electronic data such as email, and the Federal Rules have for some time expressly contemplated that parties may seek discovery of ESI. Further, plaintiff's complaint alleges a "scheme" involving Collins, Hoskins, Snook, and Sims to have plaintiff fired. Defendant was presumably aware that it provided computers and email accounts to its employees. Being well into the 21st century, defendant *and its counsel* should have anticipated that plaintiff might,

34

at a minimum, seek evidence of the alleged scheme among the ESI of those individuals. Yet defendant and its counsel took no steps to preserve that ESI – to the extent it still existed – for fifteen months after plaintiff filed her EEOC charge and a year after she filed her complaint. Again, while this Court does not conclude that defendant failed to preserve evidence wilfully or in bad faith, the record before us clearly establishes defendant is at fault for spoliation.

### D. The Harm to Plaintiff Cannot Be Definitively Determined.

Here, defendant admits that Collins' hard drive, as well as his and Hoskins' email accounts, have been irretrievably lost. (Df's Am. Supp'l Br. at 14.) Defendant also concedes the "possibility" that "information relating to Plaintiff was deleted before Harrington, Newcomb, Snook and Sims were identified as key custodians in November 2009 and Hayes instructed each to conduct searches." (*Id.* at 15.) Nonetheless, defendant argues that, "based upon Hayes' personal knowledge" of each of those individuals and their "very limited use" of their email accounts and/or assigned computers, Hayes "does not believe that any unique or significant electronically stored communications or documents that are relevant ... were lost or otherwise rendered unavailable."[9]

Ultimately, as a non-lawyer and an interested party, Hayes is not qualified to judge whether documents are relevant to the suit. Further, Hayes' assertions ignore the

---

[9] Defendant is less forthcoming regarding the permanent loss of Sims' email account. While Hayes evidently asked Sims to conduct electronic searches for certain key terms, and states that Sims represented she did so, Hosmer states that he deleted Sims' account in its entirety sometime in late 2009. Only Hosmer's declaration reveals the deletion of that account to this Court. Interestingly, defendant did not submit for this Court's consideration any declaration by Sims or Connors regarding their efforts to preserve evidence in this case, yet the record before us does not indicate that they are no longer employed by defendant.

fact that plaintiff believes that Collins, Hoskins, Sims, and/or Snook schemed to have plaintiff fired. Assuming plaintiff is correct, it is not merely possible that Collins et al. communicated (via email or otherwise) without including Hayes. In fact, it is probable that they would not have included her in any such scheme, because as their superior, Hayes' consultation was required before defendant terminated the employment of any employee. Given the timing and scope of defendant's spoliation, neither Hayes nor anyone else is in a position to determine whether unique evidence has been destroyed. No employee other than Hayes, Connors, and possibly (according to Hayes' "belief") Collins, was informed of the need to preserve ESI prior to November 2009. Even if we assume no bad faith on defendant's or its employees' part, there remains the "distinct possibility" that emails relevant to plaintiff's case were destroyed by its employees or the operation of its electronic information system after defendant's duty to preserve attached. *Jones*, 2010 WL 2106640, at *8.

As we stated above, defendant produced a total of 466 pages of documents responsive to the information sought in plaintiff's Request for Production V.[10] Approximately sixty – at least – of those pages were produced after the close of fact discovery in this case. While defendant argues plaintiff "could have deposed any or all of the custodians of potentially relevant ESI during discovery" (Df's Am. Supp'l Resp. at 22), that proposition is far from evident based on the record currently before us.

---

[10] As also noted above, plaintiff limited her discovery requests for ESI to certain topics set forth in her Request for Production V. In connection with her motion to compel, she further narrowed that Request, after being on notice that defendant had destroyed at least some of Collins' ESI. However, the topics set forth in plaintiff's narrowed Request [60-2] seek discovery regarding issues at the heart of plaintiff's discrimination and harassment claims. As a result, the fact that plaintiff limited her ESI requests to less than a dozen topics does not undercut any harm to her from defendant's spoliation. Defendant does not argue to the contrary.

Defendant has not employed Collins or Hoskins since September 2008. Defendant's submissions to this Court do not include any evidence that either of their current whereabouts are known to the parties. Additionally, while deposition testimony is one form of evidence available to a party, it is not always the best form of evidence in any given case. At worst, deponents may be motivated to conceal evidence of their wrongful conduct. At best, memories fade. However, we cannot go so far as plaintiff and conclude that "the specific instances of occurrences that happened to her ... quite likely generated electronic interchanges." (Pl's Resp. to Df's Am. Supp'l Br. at 1 [129].) Plaintiff provides no proof supporting any "likelihood" of "electronic interchanges," such as a declaration or other evidence describing the typical usage of electronic media by the individuals who allegedly mistreated her. As a result, we conclude that plaintiff has not established whether and to what extent she has been prejudiced by any irretrievable loss of unique evidence due to defendant's discovery misconduct.

## VII.   CONCLUSION

We have broad discretion to fashion and recommend an appropriate sanction for defendant's discovery misconduct in this case. Such a sanction should be narrowly tailored to ameliorate any potential prejudice to plaintiff, deter others from similar conduct, and punish defendant for the destruction of potentially relevant evidence.

The record before us reveals that defendant's efforts to preserve evidence in this case to date have been reckless and grossly negligent. Defendant did not reasonably prevent its employees or the operation of its electronic information system from destroying evidence potentially relevant to this case. Defendant has also failed to adequately supervise those employees who were asked to preserve evidence.

However, the record does not establish that defendant acted wilfully or in bad faith by purposefully seeking to destroy evidence relevant to plaintiff's claims. As a result, we decline to recommend that an order be entered, as plaintiff requests, barring defendant from asserting a defense as to liability. "This is not a case where, for example, there were deliberate attempts to 'wipe' hard drives or to destroy relevant evidence by other technological means." *Jones*, 2010 WL 2106640, at *9 (citation omitted). Under the facts before this Court, imposition of the dispositive sanction plaintiff seeks would be contrary to applicable precedent and unfair to defendant.

Nonetheless, we do not believe that defendant's discovery misconduct should go unpunished. As a result, for all of the foregoing reasons, we respectfully recommend that plaintiff's Revised Motion for Proper Sanction [88] be granted in part and denied in part as follows:

1. The Court recommends that the motion be denied as to plaintiff's request that defendant be barred from asserting a defense as to liability.

2. The Court recommends that defense counsel be required to search all of defendant's electronic media (including its email system) and hard copy files that might contain information responsive to any aspect of plaintiff's original Request for Production V. With respect to electronic media, defense counsel should not limit the key search terms to the three previously used by defendant, but must also include misspellings of plaintiff's first name as well as other key terms reasonably related to each of the topics set forth in Request for Production V. Those searches should cover the time period of February 2006 through October 2008, inclusive. Defense counsel should complete such searches and produce any nonprivileged, responsive documents

not previously produced to plaintiff, within thirty days from the date the District Court approves this Report and Recommendation, in the event that Court chooses to do so.  If any material information produced by defendant was not previously disclosed in any form to plaintiff in discovery, plaintiff may file a timely motion for leave to take additional but narrow discovery related to that new, material information.  Any such motion shall set forth the specific additional discovery sought and the particular reasons why such discovery is necessary.

3.    The Court further recommends that, at trial, the jury be instructed that defendant had a duty to preserve all electronically stored information, including emails, concerning plaintiff's allegations beginning in July 2008, but did not do so.  As a result, defendant would be precluded from arguing that any absence of discriminatory statements in this case is evidence that no such statements were made.

4.    The Court recommends that defendant be assessed the reasonable costs and fees for plaintiff's preparation of her Revised Motion for Proper Sanction and related submissions, specifically, CM/ECF document numbers 88, 97, 121, and 129.  We recommend that the parties be ordered to meet and confer regarding those costs and fees, and attempt to come to an agreement on their amount.  Any such agreement shall be filed, via a joint statement, within twenty-one days from the date the District Court approves this Report and Recommendation, in the event that Court chooses to do so. Should the parties be unable to reach such an agreement, we recommend that plaintiff file her fee petition, with any privileged documents to be submitted *in camera* only, within the time frame set by the previous sentence, and that defendant's response to that petition be filed two weeks thereafter.  Should such a motion and response be filed,

39

the parties are advised that this Court may award additional sanctions against defendant, or refuse to award plaintiff all the fees and costs sought, if we conclude that either's position is unjustified.[11]

Specific written objections to this Report and Recommendation may be served and filed within fourteen (14) days from the date that this order is served. Fed. R. Civ. P. 72. Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the Report and Recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

ENTERED:

MICHAEL T. MASON
United States Magistrate Judge

Dated: January 12, 2011

---

[11] Given the scope of our Report and Recommendation, we find it unnecessary to address plaintiff's counsel's offer to "submit to a polygraph concerning the statement of opposing counsel." (*See* Pl's Resp. to Df's Am. Supp'l Br. at 3-4 (maintaining that defense counsel Paul Krause stated to plaintiff's counsel on March 10, 2010 "in a low, but audible voice, 'We are not going to produce any of this.'").)